Filed 7/9/26  P. v. Smith CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B343809 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA011874) |
| v. | |
| STANLEY JAMES SMITH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Villalobos, Judge.  Affirmed and remanded with directions.

Nancy Haydt, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————————

In 1993, defendant and appellant Stanley James Smith (Smith)[1] was convicted of kidnapping for extortion, second degree robbery, and assault with great bodily injury.  In 2025, while Smith was serving a prison term of life without the possibility of parole (LWOP) plus 11 years, the trial court recalled the sentence under Penal Code section 1172.75.[2]  The court struck prior prison term and prior serious felony enhancements and resentenced Smith to serve LWOP plus 5 years.

Smith appeals from his resentencing.  We remand with instructions to recalculate Smith's actual custody credits.  We otherwise affirm the trial court's order.

**BACKGROUND**

## I.  Facts

"At approximately 10:45 p.m. on June 21, 1992, Carolyn G[.] [(Carolyn)][3] returned home to her condominium complex in Pasadena.  She entered the lobby through a door leading from the parking structure and walked toward the elevator.  Before the door closed completely behind her, [Smith] burst through it and jumped on her, and started punching her in

---

[1]     In the appellate record, Smith is alternately referred to as "Stanley James Smith," "Stanley Brown," "Stanley James Smith Brown," "Stanley Smith," and "Stanley Smith Brown."  We use the name that appears on the most recent abstract of judgment.

[2]     All statutory references are to the Penal Code.

[3]     Per California Rules of Court, rule 8.90(b)(4), we initially refer to the victim by her first name and last initial, and thereafter by her first name.  No disrespect is intended.

the face.  She began to scream loudly.  Her glasses were knocked to the ground, and her earrings and one shoe fell off.  [Smith] continued to beat her face and upper body, and she continued to scream.  Then, [Smith] began to choke [Carolyn] with such force that she was unable to breathe.  [Smith] said, 'Shut up, Bitch.'  She stopped screaming.  [Smith] grabbed her shirt, which tore, opened the elevator and, with [Carolyn] on her hands and knees, dragged her in.  With both of them inside the elevator, [Smith] closed the door and pushed the stop button.

"[Smith] continued to punch [Carolyn] in the face and upper body.  Then, he grabbed her purse and dumped the contents onto the elevator floor.  He scooped up the change which had fallen out and put the coins in his pocket.  He also took a silver pen.  He repeatedly asked [Carolyn], 'What have you got in here?'  After she told him that she did not have any money he said, 'Write a check, Bitch.'  She replied, 'Okay.  How much?'  He answered, '$100.'  [Carolyn] wrote the check, during which time [Smith] warned her not to get any blood on it.  When she was finished, he ripped the check out of her checkbook and shoved it into his pocket.

"[Smith] asked [Carolyn] if she was able to withdraw money from the bank.  She said that she was unable to because she did not have her automated teller machine card with her, and she would not go anywhere with [Smith].  He became very angry, so she gave him the key to her car and told him, 'Just take my car.'  He grabbed the key from her hand and asked where the car was parked.  She repeated that she was not going anywhere with him.  He shoved her into the corner of the elevator while pulling her hair, forcing her to turn her back on him, which she did not want to do.  [Carolyn] continued to struggle against him and he

3

told her to keep her head down or he would 'fuck [her] up.' She tried to look at him, and he hit her every time she tried.

"[Smith] released the stop button and the elevator door partially opened. He put the stop button on again, and repeatedly told her, 'You're coming with me.' As [Smith] stepped out, [Carolyn] released the stop button and the doors started to close. He jumped back into the elevator and asked, 'Why did you do that, bitch?' He lunged at [Carolyn], punched her in the jaw and said, 'I am going to really kick your ass now.' She started screaming again. He kept telling her that no one could hear her, and he continued to shove her into the corner.

"[Smith] again released the stop button and the elevator door opened. He stepped out and was immediately apprehended by the police, who had been called by the neighbors." (*People v. Smith Brown* (Jan. 6, 1995, B079643) [nonpub. opn.], at pp. 3–5 (*Smith Brown*).)

## II. Procedural History

### A. *Conviction and sentencing*

In 1993, a jury found Smith guilty of kidnapping for extortion (§ 209, subd. (a); count 1), second degree robbery (§ 211; count 3), and assault with great bodily injury (§ 245, subd. (a)(1); count 4). The jury found true allegations that, as to count 1, the victim suffered bodily harm (§ 209, subd. (a)) and, as to all counts, Smith personally and intentionally inflicted great bodily injury (§ 12022.7). The trial court found true allegations that Smith had suffered two prior serious felony convictions (§ 667, subd. (a)) and one prior prison term (former § 667.5, subd. (b)).

The trial court sentenced Smith to a total prison term of LWOP plus 19 years.

4

On direct appeal, this court stayed the eight-year term imposed on count 3 pursuant to section 654 and found that Smith was entitled to additional days of custody credit. (*Smith Brown*, *supra*, B079643 at pp. 14–17.) The judgment was otherwise affirmed. (*Id.* at p. 17.)

**B. *Section 1172.75 proceedings***

In 2023, Smith was deemed eligible for resentencing under section 1172.75. Smith requested that the trial court recall his LWOP sentence and resentence him to the lesser offense of section 209, subdivision (b)(1), which would offer the possibility of parole, "in light of his age, age-related medical conditions, length of time he has served, and exemplary prison performance."

On January 29, 2025, the trial court struck the former section 667.5, subdivision (b) prior prison term enhancement and one section 667, subdivision (a) prior serious felony enhancement. The court stayed the upper term sentences on counts 3 and 4. The court declined to reduce the LWOP sentence on count 1.

The trial court explained its reasoning as follows: "In reviewing the case for resentencing, the number [one] thing that I do is look at the facts and circumstances of the offense. This is one of the most heinous cases that I've ever reviewed. [¶] . . . Smith brutally beat this woman in the commission of a robbery. . . . [¶] He went far beyond just taking the person's property. He had this poor woman who was dragged into the elevator and just beaten to a pulp for no reason. . . . [H]e had her under control. He took her purse. He could take her money and stuff. There was no reason to beat her so viciously. [¶] . . . I read where he was perhaps under the influence of cocaine at the time, but still there's something inhuman about somebody who acts like that in committing a robbery and beating someone so

5

viciously for no purpose.  It's just unbelievable."  The court also considered Smith's criminal history, noting that he had "a prior sex offense . . . another robbery which was consistent with what his life was when he was out of custody."

The trial court acknowledged that Smith was "probably a different person now" after so many years in custody and "applaud[ed] whatever efforts he'[d] made to change the person he is[,] either doing programs or counseling and so forth."  "[T]his crime was so heinous and vicious[,]" however, that there was "no way [the court] would undo the jury's verdict on count 1 and the sentence of the court to [LWOP]."

The trial court resentenced Smith to a total term of LWOP plus 5 years.  Smith filed a timely notice of appeal from his resentencing.

## DISCUSSION

### I.  Standards of Review

We review the trial court's sentencing decisions for an abuse of discretion.  (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874.)  We interpret relevant statutes and review claims of ineffective assistance of counsel de novo.  (*People v. Mayfield* (1993) 5 Cal.4th 142, 199; *People v. Terwilligar* (2025) 109 Cal.App.5th 585, 595.)

### II.  Relevant Law

#### A.  *Section 1172.75*

Section 1172.75 renders "legally invalid" any former section 667.5, subdivision (b) prior prison term enhancement imposed before January 1, 2020, except for a prior conviction for a sexually violent offense.  (§ 1172.75, subd. (a).)  A defendant who qualifies for the recall of sentence under section 1172.75 is entitled to "a full resentencing" at which the trial court may

reconsider all prior sentencing decisions.  (*People v. Monroe*
(2022) 85 Cal.App.5th 393, 402 (*Monroe*).)

Section 1172.75 provides "specific instructions" for the trial
court to exercise its broad resentencing authority.  (*People v.
Carter* (2023) 97 Cal.App.5th 960, 966.)  Among other things, the
court must "apply any . . . changes in law that reduce sentences
or provide for judicial discretion so as to eliminate disparity of
sentences and to promote uniformity of sentencing."  (§ 1172.75,
subd. (d)(2).)  The court "may consider postconviction factors,
including, but not limited to, the disciplinary record and record of
rehabilitation of the defendant while incarcerated, evidence that
reflects whether age, time served, and diminished physical
condition, if any, have reduced the defendant's risk for future
violence, and evidence that reflects that circumstances have
changed since the original sentencing so that continued
incarceration is no longer in the interest of justice."  (§ 1172.75,
subd. (d)(3).)

**B.  *Section 1385***

Under section 1385, as amended by Senate Bill No. 81
(2021–2022 Reg. Sess.), effective January 1, 2022, a trial "court
shall dismiss an enhancement if it is in the furtherance of justice
to do so[.]"  (§ 1385, subd. (c)(1).)  "In exercising its discretion" to
dismiss an enhancement, "the court shall consider and afford
great weight to evidence offered by the defendant to prove" the
presence of nine enumerated "mitigating circumstances . . . .
Proof of the presence of one or more of these circumstances
weighs greatly in favor of dismissing the enhancement, unless
the court finds that dismissal of the enhancement would
endanger public safety."  (*Id.*, subd. (c)(2).)  Mitigating factors
include that (1) "[m]ultiple enhancements are alleged in a single

7

case" (*id.*, subd. (c)(2)(B)); (2) "[t]he application of an enhancement could result in a sentence of over 20 years" (*id.*, subd. (c)(2)(C)); (3) "[t]he current offense is connected to mental illness" (*id.*, subd. (c)(2)(D)); (4) "[t]he current offense is connected to prior victimization or childhood trauma" (*id.*, subd. (c)(2)(E)); and (5) "[t]he enhancement is based on a prior conviction that is over five years old" (*id.*, subd. (c)(2)(H)).

## III. Reimposition of LWOP Sentence on Count 1

Smith contends that the trial court abused its discretion by failing to reduce his LWOP sentence on count 1 to life with the possibility of parole. We disagree.

As required by section 1172.75, the trial court struck Smith's former section 667.5, subdivision (b) prior prison term enhancement. The court also, as required by section 1172.75, conducted a full resentencing (see *Monroe*, *supra*, 85 Cal.App.5th at p. 402), during which it exercised its discretion to strike one section 667, subdivision (a) prior serious felony enhancement. Although the court had the discretion under section 1385 to strike the bodily harm allegation as to count 1, which would have reduced the sentence to life with the possibility of parole, the court declined to do so. (See § 209, subd. (a) [punishment for kidnapping for extortion when the victim "suffers death or bodily harm" is LWOP; otherwise, punishment is life in prison with the possibility of parole]; *People v. Marsh* (1984) 36 Cal.3d 134, 144.) The court's exercise of its discretion was eminently reasonable given the extreme violence and callousness exhibited by Smith during the course of the underlying kidnapping.

Smith argues that the trial court failed to make an express finding under section 1172.75, subdivision (d)(1), that a lesser sentence would endanger public safety. The court, however, was

under no obligation to make such a finding because its aggregate sentence of LWOP plus 5 years was less than the LWOP-plus-11-year sentence Smith had been serving.  (See § 1172.75, subd. (d)(1) ["Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety"].)

Smith also argues that the trial court failed to consider or afford great weight to the presence of mitigating circumstances set forth in section 1385, subdivision (c)(2), or more generally, his "good conduct in prison."  Smith has failed to demonstrate an abuse of discretion.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 376 [" ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary" ' "].)

Because "all intendments and presumptions are indulged in favor of [the] correctness" of the trial court's order (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133), we presume that the court was aware of the applicable law, gave great weight to any relevant mitigating circumstance, and declined to dismiss the enhancement due to countervailing factors.  (See *People v. Walker* (2024) 16 Cal.5th 1024, 1029 [at resentencing, a trial court may reimpose a challenged enhancement upon "find[ing] substantial, credible evidence of countervailing factors that . . . 'neutralize . . . the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice' "].)

The trial court not only recognized the "heinous" facts of the crime, but it also considered Smith's past convictions for

9

forcible oral copulation (former § 288a) and second degree burglary (§ 459), "which was consistent with what his life was when he was out of custody." The court acknowledged and "applaud[ed]" Smith's rehabilitative efforts during his incarceration, but it was ultimately unconvinced that the LWOP sentence on count 1 should be disturbed. Under these circumstances, we cannot conclude that this was an abuse of discretion.

## IV. Reimposition of Upper Terms on Counts 3 and 4

Smith contends that the trial court erred by reimposing (albeit also staying) the upper terms on counts 3 and 4. We find no error or abuse of the court's discretion.

Section 1172.75, subdivision (d)(4), provides: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." The unambiguous language of this provision "carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing and does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 458 (*Brannon-Thompson*); see also *People v. Cornett* (2012) 53 Cal.4th 1261, 1265 [when interpreting a statute, "[t]he plain meaning controls if there is no ambiguity in the statutory language"].)

Because Smith was originally sentenced to the upper terms on counts 3 and 4, the trial court could reimpose the upper terms

at resentencing without the relevant aggravating factors being admitted or proven beyond a reasonable doubt. (*People v. Mathis* (2025) 111 Cal.App.5th 359, 374, review granted Aug. 13, 2025, S291628 (*Mathis*); *Brannon-Thompson, supra*, 104 Cal.App.5th at pp. 466–467.) We respectfully disagree with the contrary holding of *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 329–330.[4]

Further, nothing in the record suggests that the trial court was unaware of its authority to impose a lesser sentence on counts 3 and 4. And because the aggregate sentence was less than that originally imposed, the court was not required to make a finding that a lesser sentence on counts 3 and 4 would endanger public safety. (See § 1172.75, subd. (d)(1).)

## V. Ineffective Assistance of Counsel

Smith argues that his counsel at resentencing was constitutionally ineffective because she did not ask the trial court to dismiss the "bodily injury" enhancement on count 1 or to impose less than the upper terms on counts 3 and 4. Smith also faults his counsel with failing to adequately "advise" the court on the scope and requirements of its resentencing authority.

To establish ineffective assistance of counsel, a defendant must show that counsel's performance was both deficient and prejudicial. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "When

---

[4] The California Supreme Court has granted review to resolve the split regarding "whether section 1172.75, subdivision (d)(4), allows a trial court to reimpose an upper term sentence where the facts underlying one or more aggravating circumstances were neither stipulated to by the defendant nor found true beyond a reasonable doubt by the factfinder. (See *People v. Eaton* (Mar. 14, 2025, C096853), review granted May 14, 2025, S289903.)" (*Mathis, supra*, 111 Cal.App.5th at p. 373, fn. 6, review granted.)

examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*Ibid.*) To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).)

We reject Smith's ineffective assistance claim because he has failed to demonstrate a reasonable probability that any purported error by counsel affected the resentencing. (See *Strickland*, *supra*, 466 U.S. at p. 691 ["An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"].) The record reflects that the trial court was aware of its resentencing authority, weighed aggravating and mitigating factors, and reduced Smith's sentence from LWOP plus 11 years to LWOP plus 5 years in a case the court described as "one of the most heinous . . . that [it had] ever reviewed." It is not reasonably probable that any omitted request or argument from counsel would have resulted in a more favorable outcome for Smith.

## VI. Custody Credit

Smith contends, and the People concede, that the trial court incorrectly calculated his custody credit. We agree with the parties. The abstract of judgment following the resentencing hearing does not reflect the actual days of custody credit as of the date of resentencing. (See *People v. Buckhalter* (2001) 26 Cal.4th

20, 23.)  We therefore remand the matter so the court may recalculate Smith's actual days of custody credit and prepare an amended abstract of judgment.

## DISPOSITION

The matter is remanded for the trial court to recalculate Smith's actual days of custody credit, prepare an amended abstract of judgment, and forward a certified copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.  The court's January 29, 2025, order is otherwise affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

GOORVITCH, J.

We concur:

CHAVEZ, Acting P. J.

RICHARDSON, J.

13